NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

RECEIVED MAR - 9 2018 AT 8:30 _____ M WILLIAM T. WALSH CLERK

GOVERNMENT EMPLOYEES
INSURANCE CO., GEICO INDEMNITY
CO., GEICO GENERAL INSURANCE
COMPANY, and GEICO CASUALTY
CO.,

    Plaintiffs,

v.

HAMILTON HEALTH CARE CENTER
P.C., BARRY FASS, M.D., DAVID E.
SMITH, M.D., STEPHAN KOSMORSKY,
D.O., NOLA T. MAHONEY, D.O., JOHN
J. MAHONEY, D.O., ANTHONY F.
PIERRO, D.C., STEPHEN M. LYCHOCK,
D.C., ALEXANDER J. KISHYK, D.C.,
GARDEN STATE MAGNETIC
IMAGING, L.L.C., REHAN ZUBERI,
NAZISH KHAN a/k/a NASH KHAN,
TARIQ DIN, FAIZAH ZUBERI, M.D.,

    Defendants.

Civ. No. 17-0674

**OPINION**

THOMPSON, U.S.D.J.

This matter comes before the Court upon the motion by Plaintiffs Government Insurance Co., GEICO Indemnity Co., GEICO General Insurance Co., and GEICO Casualty Co. (collectively, "Plaintiffs") for Default Judgment as to Faizah Zuberi, Rehan Zuberi, Nazish Khan, Tariq Din, and Garden State Magnetic Imaging, LLC (collectively, "Defaulting Defendants"). (ECF No. 35.) Defendant Khan cross-moved to vacate default. (ECF Nos. 41, 43.) The Court has decided these Motions based upon the written submissions of the parties

1

pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiffs' Motion for Default Judgment is granted, and Defendant Khan's Cross-Motion is denied.

## BACKGROUND

### I. Factual Background

This case arises out of an alleged insurance fraud scheme, whereby Plaintiffs claim that all Defendants in this action made fraudulent insurance charges and claims for the fraudulent provision of medical services. (Compl. ¶ 1, ECF No. 1.) Specifically, Plaintiffs allege that since 2008, Defendants have caused them to suffer $3,300,000 in damages for false insurance claims and charges for "medically unnecessary, illusory, and unreimbursable radiology services," allegedly provided to individuals involved in car accidents covered by GEICO. (Pls.' Br. in Support of Mot. Default J. [Pls.' Br.] at 4, ECF No. 35-1.) This scheme is based on New Jersey's No-Fault Laws, which permit insured individuals to assign their rights to Personal Injury Protection ("PIP") benefits to healthcare service providers in exchange for the provision of medically necessary services following automobile accidents. (Compl. ¶¶ 37–38.) The provider must comply with all NJ statutory and regulatory provisions (*id.* ¶¶ 39–41), such as the prohibition on the ownership of a facility by someone convicted of a crime related to the ability to own, operate, or manage a facility (*id.* ¶¶ 53–55).

Garden State Magnetic Imaging, LLC, ("GSMI") is an ambulatory care facility providing radiology services, owned and operated by Defendants F. Zuberi, Khan, and Din. (Compl. ¶¶ 83, 85, 88–89.) Plaintiffs allege that R. Zuberi—although ineligible to own or operate GSMI because of a 1998 Medicaid fraud conviction—impermissibly co-owned, managed, and operated GSMI. (*Id.* ¶¶ 84, 87, 90–92.) Hamilton Healthcare, P.C., is a medical professional corporation, owned and operated by Barry Fass, M.D., that also processed medically unnecessary exams,

testing, pain management, treatment, and other services. (*Id.* ¶¶ 4(i), 132–36.) GSMI's Defendants entered into an illegal kick-back referral scheme with Hamilton Healthcare and Dr. Fass. (*Id.* ¶¶ 102–08.) Under this scheme, GSMI would bill NJ automobile insurers for medically unnecessary services using the patients referred to it by Hamilton Healthcare. (*Id.* ¶ 101.) "[R.] Zuberi and his associates paid more than $300,000.000 in illegal kickbacks to healthcare service providers in exchange for patient referrals to Zuberi's ambulatory care facilities for expensive radiology services." (*Id.* ¶ 115 (referring to facts disclosed in press release by NJ Attorney General John J. Hoffman).)

In June 2014, Defendant R. Zuberi and others were arrested and charged with criminal violations associated with this scheme. (*Id.* ¶ 93.) On October 16, 2014, seven medical service providers who referred patients to Defendant R. Zuberi's facilities were also arrested. (*Id.* ¶ 117.) On May 11, 2015, Defendant R. Zuberi "pleaded guilty to first-degree financial facilitation of criminal activity, and second-degree conspiracy to commit commerical bribery in connection with, among other things, the Defendants' fraudulent scheme." (*Id.* ¶ 122.) Defendant Din pled guilty to "charges of conspiracy, money laundering, commerical bribery, and misconduct of a corporate official" for the payment of kickbacks. (*Id.* ¶ 125.)

Plaintiffs filed this lawsuit on January 31, 2017. (ECF No. 1.) Plaintiffs sued Hamilton Healthcare and physicians at Hamilton Healthcare—Fass, Smith, Kosmorsky, Mahoney, Pierro, Lychoch, Kishky—and GSMI and those associated with the ownership and control of GSMI—F. Zuberi, R. Zuberi, Din, and Khan. (Compl. ¶ 4.) The Complaint included twelve causes of action, encompassing claims for: declaratory judgment, 28 U.S.C. §§ 2201, 2202; violations of the New Jersey Insurance Fraud Prevention Act ("IFPA"), N.J.S.A. 7:33A-1; violations of RICO, 18 U.S.C. § 1962(c)–(d); common law fraud; aiding and abetting; and unjust enrichment. (*See*

*generally id.*) A number of Defendants filed an Answer and Affirmative Defenses on March 29, 2017 (ECF No. 11), and many of those Defendants have since been dismissed per stipulation (ECF Nos. 27, 34). Plaintiffs requested and the Clerk entered default against Defendants Tariq Din and GSMI on April 28, 2017. (ECF No. 17.) Default was entered against Nazish Khan on August 3, 2017. (ECF No. 29.)

On September 21, 2017, this Court granted Plaintiffs' Motion to Strike inadequate email "answers" by Defendants R. and F. Zuberi. (ECF Nos. 30, 31.) Subsequently, per Plaintiffs' request, the Clerk of the Court entered default as to Defendants R. Zuberi and F. Zuberi on September 21, 2017. (ECF No. 32.) Plaintiffs have now moved for default judgment as to the Defaulting Defendants. (ECF No. 35.) In opposition, Defendant Khan cross-moved to vacate default on the basis of improper service and to deny default judgment (ECF No. 41, 43), and Plaintiffs replied (ECF No. 42).

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 55, following the entry of default by the Clerk of the Court, default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A party who has made a proper showing under Rule 55 is not entitled to default judgment as of right; the entry of default is left to the district court's discretion. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984). "Default judgment is permissible only if the plaintiff's factual allegations establish a right to the requested relief." *E. Constr. & Elec., Inc. v. Universe Techs., Inc.*, 2011 WL 53185, at *3 (D.N.J. Jan. 6, 2011).

The court is to consider three factors in deciding whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct," taken willfully and in bad faith. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The court also has the discretion to set aside an entry of default for good cause. Fed. R. Civ. P. 55(c); *Bailey v. United Airlines*, 279 F.3d 194, 204 (3d Cir. 2002). When determining whether to vacate default, the court weighs the same three *Chamberlain* factors. The Third Circuit has cautioned that default judgment is a sanction of last resort—cases are more appropriately decided on their merits where practicable. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003); *Hritz*, 732 F.2d at 1181. Therefore, doubtful cases are to be resolved in favor of the party moving to set aside the default so that cases may be decided on the merits. *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

## DISCUSSION

I. **Cross-Motion to Vacate or Set-Aside Default Analysis**

In response to Plaintiffs' Motion for Default Judgment, Defendant Khan cross-moved to vacate or set aside the entry of default for improper service of process. (Def. Khan's Cross-Mot. at 4, ECF No. 41-3.) Because proper service of process is required to establish personal jurisdiction over a defendant, the Court "must first assess the adequacy of service of process in order to determine whether default judgment should be entered." *Days Inns Worldwide, Inc. v. Hartex Ventures, Inc.*, 2011 WL 1211353, at *2 (D.N.J. Mar. 28, 2011) (citing *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991)). Where a plaintiff cannot demonstrate proper service, default is not valid and must be set aside. *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985); *see also Moody Nat'l FFI Meadowlands MT, LLC v. Gager*, 2013 WL 622128, at

*4 (D.N.J. Jan. 24, 2013) ("If plaintiff failed to effect service of process on each defendant, then entry of a default judgment is premature and unwarranted.").

Under Federal Rule of Civil Procedure 4(e), individuals "may be served in a judicial district of the United States . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Prudential Ins. Co. of Am. v. Holladay*, 2008 WL 1925293, at *2 (D.N.J. Apr. 30, 2008) (quoting Fed. R. Civ. P. 4(e)(1)). New Jersey law prefers personal service, but where service cannot be effectuated successfully, substituted service may be made "by certified mail, return receipt requested or service as permitted by court order." *Id.* (citing New Jersey Court Rule 4:4-4(b)(1), (3)); *see also Guardian Life Ins. Co. of Am. v. Estate of Walter Matesic*, 2016 WL 3763340, at *2 (D.N.J. July 14, 2016).

Defendant Khan claims that she was improperly served twice in this action: at her former home address and her sister's address. (Def. Khan's Cross-Mot. at 4.) Plaintiffs made various attempts at service via directed guaranteed subpoena to an address for Defendant Khan found in LexisNexis's person locator. (Pls.' Mot. Substituted Service at 2–3, ECF No. 19-3.) After the initial address proved unsuccessful, Plaintiffs unsuccessfully attempted another address found in public deed records. (*Id.* at 3.) Plaintiffs provided documentation of service and subpoenas of due diligence of service for February 24, 2017 and March 22, 2017. (Kang Decl. ¶¶ 13, 17, ECF No. 19-1; Exs. E, I, H, ECF No. 19-2.) Plaintiffs then moved for substituted service for Defendants R. Zuberi and Khan. (ECF No. 19.) Magistrate Judge Douglas E. Arpert ordered substituted service for Defendant Khan by service upon the law firm Kamensky, Cohen & Riechelson, P.C. (ECF No. 22), counsel for Defendant Khan in a recent civil action in Mercer County, Chancery Court (Pls.' Mot. Substituted Service at 3–4, 6).

6

Plaintiffs submitted an affidavit of service attesting that the complaint was delivered to the law offices of Kamensky, Cohen & Riechelson in Trenton, NJ for Philip J. Cohen, Esq., and that the complaint was left with an individual named Fran Connnelly, a person authorized to accept service. (ECF No. 24-1.) The parties agree that Mr. Cohen previously represented Defendant Khan. (Cohen Cert. ¶ 1, ECF No. 41-5.) Mr. Cohen, however, certifies that although the affidavit reflects delivery while he was away from the office, he did not actually receive the complaint. (*Id.* ¶¶ 3–4.) Defendant Khan likewise claims she did not receive the complaint from her former attorney. (Def. Khan Cross-Mot. at 1.) Despite Mr. Cohen's certifications, the Court is satisfied that service on Defendant Khan was in fact valid. *See Luce, Schwab & Kase, Inc. v. Ski Conditioning Inc.*, 2012 WL 2035795, at *9 n.4 (N.J. Super. Ct. App. Div. June 7, 2012) (citing NJ cases for proposition that substituted service is valid despite the fact that the defendants never received the complaint). Service was effectuated pursuant to court order for substituted service, and it was in fact delivered to Defendant Khan's attorney and to an individual who represented her ability to accept service. Therefore, the Court finds no basis to vacate or set-aside default for improper service of process.

II. **Motion for Default Judgment and Cross-Motion to Deny Default Judgment Analysis**

   A. <u>Sufficiency of Plaintiffs' Claims</u>

Of the twelve causes of action pled in the Complaint, Plaintiffs move for default judgment as to the second, sixth, and eighth causes of actions. Therefore, the following discussion is limited to relief for (1) IFPA violations, (2) common law fraud, and (3) unjust enrichment.

1. *New Jersey Insurance Fraud Prevention Act Violations*

The IFPA provides a remedy to insurance companies where individuals or practitioners commit violations in a number of different categories, including: knowingly falsifying claims, presenting false or misleading information related to a claim, and concealing or knowingly failing to disclose effecting insurance entitlements or other insurance fraud violations. *See generally* N.J.S.A. 17:33A-4. The act also covers conduct such as fraudulent kickback-referral schemes. *Allstate Ins. Co. v. Northfield Med. Ctr., P.C.*, 159 A.3d 412, 423 (N.J. 2017) (finding conduct violated the IFPA when defendants engaged in "an impermissible professional practice structure that enabled [the defendant] to benefit from proceeds derived from his submission of medical claims for reimbursement."). These violations and proof of such require a preponderance of the evidence, *id.*, and the standard for knowing is a "normal language usage . . . understood to be an awareness or knowledge," *id.* at 426. Thus, an IFPA claim requires a plaintiff to allege "(1) knowledge, (2) falsity, and (3) materiality." *Horizon Blue Cross Blue Shield of N.J. v. Focus Express Mail Pharmacy, Inc.*, 2017 WL 3588195, at *4 (D.N.J. Aug. 17, 2017).

Plaintiffs have pled violations of IFPA related to falsified insurance claims, concealment and failure to disclose facts affecting entitlement to benefits, and a kickback referral scheme. Plaintiffs' Complaint details that the Defaulting Defendants submitted countless HCFA-1500 claim forms and treatment reports to GEICO. These reports mispresented GSMI's compliance with NJ law and eligibility to receive PIP benefits due to R. Zuberi's prior criminal conduct which resulted in his imprisonment and barred him from participation in Medicaid and "legally disqualified him from owning, managing, or operating an ambulatory care facility such as GSMI. (Compl. ¶¶ 23, 84, 440.) *Allstate Ins. Co. v. Greenberg*, 871 A.2d 171, 176 (N.J. Super. Ct. Law.

8

Div. 2004). These forms and reports also misrepresented that the services provided in those forms and reports complied with NJ law; in fact they were not medically necessary under PIP or even actually administered to patients. (Compl. ¶ 440.) And finally, the allegations detail an extensive kickback relationship between GSMI and Hamilton Healthcare. (Compl. ¶¶ 101–31.)

As to all of these allegations, Plaintiffs articulate facts to meet the three criteria of an IFPA claim. The Defaulting Defendants were well aware of their ineligibility to operate a facility, but used a series of management, marketing, and billing agreements to involve R. Zuberi nonetheless. (*Id.* ¶¶ 90–92.) Defendants also knowingly orchestrated these fraudulent schemes, paying Hamilton Healthcare and Fass for referrals of patients for the fraudulent billing. (*Id.* ¶¶ 114–18.) They submitted fraudulent forms, reports, and bills, satisfying the second prong; and their misrepresentations were material, as they comprised the basis for reports and bills and induced Plaintiffs to pay out insurance benefits. *See Zuberi*, 2017 WL 4790383, at *5.

   2. *Common Law Fraud*

A claim for common law fraud remains distinct from claims under the IFPA, demanding additional elements than those described above. *See Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 3588195, at *4. A claim of common law fraud under New Jersey law has five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Schenkel v. Flaster*, 54 F. App'x 362, 364 (3d Cir. 2002) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). Where a party is under a duty to disclose to another, silence through omissions or failure to inform—rather than active misrepresentation—can be fraudulent. *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013).

Here, as discussed above, the Defaulting Defendants engaged in an extensive scheme that involved a number of material misrepresentations and omissions, including representations that GSMI was eligible to receive PIP benefits and representations that the services billed were legitimate and entitled to PIP benefits. (Compl. ¶ 463; Pls.' Br. at 14.) These fraudulent claims were made for patients who never received or needed such treatment (*see* Compl. ¶ 110), satisfying the intent requirements insofar as Defendants knew they were false and intended for Plaintiffs to rely on the representations and make payments. In other words, "presuming the allegations to be true," these were misrepresentations of facts that Defendants knew to be true, that caused reliance and damages to Plaintiffs "by paying unwarranted insurance benefits." *Va. Sur. Co., Inc. v. Macedo*, 2011 WL 1769858, at *17 (D.N.J. May 6, 2011) (finding "on-going scheme to secure workers' compensation benefits" pursuant to a policy met criteria of common law fraud).

Plaintiffs' claims of fraud, both under common law and under the IFPA, are subject to the requirements of Federal Rule of Civil Procedure 9. The Court will address this standard and whether Plaintiffs' claims meet the requirements below with respect to Defendant Khan's defenses.

### 3. *Unjust Enrichment*

A claim for unjust enrichment requires that the "defendant received a benefit and that retention of that benefit without payment would be unjust." *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 193, 196 (D.N.J. 2012) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). There must also be proof that "the plaintiff expected remuneration from the defendant, or if the true facts were known to the plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Id.* (quoting

*Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. 1966)). Unjust enrichment is a form of quasi-contractual liability, and therefore, the plaintiff must allege an underlying direct relationship between the parties. *See Stewart*, 877 F. Supp. 2d at 196; *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011).

As already detailed in this Opinion, Defaulting Defendants received the benefits of PIP coverage to which they were not entitled and for falsified services. The Court finds it reasonable to assume that had Plaintiffs known these claims were false, that they would have expected remuneration from Defendants. These claims are predicated on the underlying relationship between insurance companies and medical service providers, pursuant to statutory provisions of New Jersey's No-Fault Laws and PIP. Based on this relationship, "Plaintiffs presumed they were paying for services rendered and receiving truthful treatment reports." *Zuberi*, 2017 WL 4790383, at *6. Plaintiffs are entitled to relief on these claims because Defaulting Defendants' "[r]etention of these benefits would be unjust in light of the alleged insurance fraud scheme." *Va. Sur. Co., Inc.*, 2011 WL 1769858, at * 17. On balance, Plaintiffs are entitled to relief for these claims.

B. <u>Default Judgment Factors</u>

The Court next weighs the three factors used to determine whether default judgment is appropriate. These factors will also inform whether default should be vacated with respect Defendant Khan for good cause shown.

1. *Unfair Prejudice*

First, Plaintiffs argue that they will be unfairly prejudiced, leaving them with no opportunity for remedy, if default is denied. (Pls.' Br. at 24–25.) Prejudice occurs where a plaintiff's ability to pursue its claim is impaired. *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653,

657 (3d Cir. 1982). Here, Defendants F. Zuberi, R. Zuberi, Din, and GSMI have failed to file any responsive pleadings or participate in this litigation thus far,[1] and their continued failure to do so will leave Plaintiffs without recourse or "means of vindicating" these claims. *Rouleau v. Elwell*, 2013 WL 5676068, at *4 (D.N.J. Oct. 17, 2013); *United Comm., LLC v. Hallowell Int'l, LLC*, 2012 WL 5880295, at *4 (D.N.J. Nov. 21, 2012). Additionally, the entirety of this case concerns an extensive fraud scheme, raising concern for potential further fraud and collusion and thus continued prejudice to Plaintiffs. *See U.S. Commodity Futures Trading Comm'n v. Siegel*, 2014 WL 7404537, at *8 (D.N.J. Dec. 30, 3014); *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 524 (3d Cir. 2006). The Court notes that Defendant Khan's opposition and Cross-Motion does not address this factor.

2. *Meritorious Defense*

Plaintiffs assert that Defaulting Defendants "cannot raise any meritorious defense." (Pls.' Br. at 21.) Defendant Khan argues that Plaintiffs fail to meet the Rule 9(b) standard for pleading fraud with particularity and that these claims are "improperly group pled" without describing the conduct of individual defendants. (*See* Def. Khan's Cross-Mot. at 5–6.)

Whether a defendant has a meritorious or litigable defense is regarded as a dispositive issue. *Nat'l Specialty Insur. Co. v. Papa*, 2013 WL 1952151, at *2 (D.N.J. May 9, 2013); *see also $55,518.05 in U.S. Currency*, 728 F.2d at 195 ("This is a critical issue because without a meritorious defense [Defendant] could not win at trial. Therefore, there would be no point in setting aside the default judgment . . . ."). A meritorious defense is one that would constitute a complete defense at trial. *$55,518.05 in U.S. Currency*, 728 F.2d at 195; *Williams v. Zhou*, 2015

---

[1] The Court notes that Defendants R. and F. Zuberi filed email "answers," which were stricken by the Court for their procedural and substantive deficiencies. (ECF No. 30.) Therefore, the Complaint also remains unopposed with respect to F. and R. Zuberi.

12

WL 4940817, at *1 (D.N.J. Aug. 19, 2015). Where a defendant has not responded and there are no defenses reflected in the record, courts cannot say whether a meritorious defense exists and are permitted to presume that none exists. *Coach, Inc. v. Bags & Accessories*, 2011 WL 1882403, at *6 (D.N.J. May 17, 2011).

Defaulting Defendants R. Zuberi, F. Zuberi, Din, and GSMI have failed to answer, let alone present the Court with any defense that could possibly be considered meritorious. While Defendants R. and F. Zuberi provided some form of a response, their emails were substantively inadequate (*see* Op. at 5, ECF No. 30), effectively leaving Plaintiffs' Complaint unopposed. Moreover, Plaintiffs have articulated a sound right to relief, *supra* Section I.A. *See Chanel, Inc. v. Matos*, 133 F.3d 678, 686 (D.N.J. 2015) ("Defendant has failed to proffer any defense to Plaintiff's claims, meritorious or otherwise, and the Complaint does not otherwise suggest the existence of any meritorious defense."). Finally, because Defendants R. Zuberi and Din pled guilty to the criminal charges related to the scheme underlying this lawsuit (Compl. ¶¶ 27–29, 122, 125), it is unlikely those two Defendants have meritorious defenses. *U.S. SEC v. Secure Capital Funding Corp.*, 2013 WL 3286234, at *6 (D.N.J. Mar. 10, 2014) (finding fact that defendant pled guilty to criminal charges for the same fraudulent conduct supported the inference that he had no meritorious defense).

Defendant Khan defends on the ground that Plaintiffs' claims fail to meet the standard required to plead fraud under Rule 9(b). Specifically, she argues that Plaintiffs attribute all fraud generally to all Defendants and do not identify specific individuals or conduct, and instead, Plaintiffs improperly group-plead. (Def. Khan's Cross-Mot. at 4–5.)[2] "Pursuant to Rule 9(b), a

---

[2] Defendant Khan also claims that Plaintiffs fail to plead a claim for RICO violations. (Def. Khan Cross-Mot. at 5–6.) As Plaintiffs note in their opposition, however, they have not moved

plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)) (alteration in original). This argument or defense appears to be a reference to the "group pleading doctrine," which the Third Circuit describes as a "judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations." *Winer Family Tr. v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007). This doctrine is intended to overcome the particularity requirement when pleading fraud, insofar as it "allows a plaintiff to plead that defendants made a misstatement or omission of material fact without pleading particular facts associating the defendants to the alleged fraud." *Id.* (citing 3 Thomas Lee Hanzen, Treatise on the Law of Sec. Reg. ¶ 12.13 (5th ed. 2006)); *see also In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 573, 584 (D.N.J. 2005) (noting that group-pleading, found within securities law, did not survive the enactment of the Public Securities Law Reform Act).

Here, Plaintiffs' Complaint identifies Defendant Khan as an "individual[] who owned, controlled, and [was] associated with GSMI" (Compl. ¶ 4(vi)), or alternatively phrased, who together with F. Zuberi and Din "owned, operated, and managed GSMI" (*id.* ¶ 28). The Complaint also includes an exceptionally detailed factual background that serves as the basis for these fraud-based causes of action, with great specificity regarding the general scheme, the kickback relationship, and examples of particular referrals. (*See* Compl. ¶¶ 37–430; Compl. Ex.

---

for summary judgment on the RICO claims. (Pls.' Reply at 8, ECF No. 42; *see also* Mot. Default J. at 1.) Accordingly, the Court will not address the RICO arguments or defenses.

1, ECF No. 1-1.) It is true that Khan's name only appears in the Complaint's factual background along with R. Zuberi, F. Zuberi, Din, and GSMI. The Court, however, is satisfied that the details and facts of co-ownership, management, and control are sufficient to establish fraud claims against Defendant Khan under Rule 9(b).

Moreover, Plaintiffs do not plead fraud with respect to securities law, and while the allegations do involve misstatements and omissions in documents submitted to insurance companies, this case is distinguishable from group-published securities documents. Defendant Khan's argument is inapplicable to the present fraud claims, and thus would not constitute a complete defense at trial or a meritorious defense for default judgment.

### 3. *Culpable Conduct by Defendants*

Finally, Plaintiffs argue that Defendants' failure to respond is per se culpable. Culpable conduct refers to "actions taken willfully or in bad faith," *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983), rising above the level of mere negligence, *Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 460 (3d Cir. 2011). Failure to defend, despite service of a complaint, is a product of a defendant's culpable conduct. *Chanel*, 133 F.3d at 687. Plaintiffs attempted to effectuate regular and substituted service with leave of the Court. (ECF Nos. 19, 20.) Additionally, the deficiencies that led the Court to strike the Zuberi Defendants' answers are also a product of their own direct conduct, for which they are culpable. These facts indicate that Defendants R. Zuberi, F. Zuberi, Din, and GSMI have approached this pending litigation with willful neglect. Defendant Khan has now participated and cross-moved, certifying that she would have participated timely had she known of the litigation. (Khan Cert. ¶ 12, ECF No. 41-4.) Nonetheless, balancing these three factors and weighing all considerations, the Court finds default judgment in favor of Plaintiffs against all Defaulting Defendants is appropriate.

15

### III. Plaintiffs' Requested Relief

While the court need not accept the plaintiff's allegations regarding damages as true, *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008), final judgment may be entered where damages are for a sum certain, Fed. R. Civ. P. 55(b)(2). Under the IFPA, "a successful claimant under subsection a. shall recover treble damages if the court determines that the defendant has engaged in a pattern of violating this act." N.J.S.A 17:33A-7(b); *see Material Damages Adjustment Corp. v. Open MRI of Fairview*, 799 A.2d 731, 740 (N.J. Super. Ct. App. Div. 2002) ("The statute also *mandates* treble damages . . . .") (emphasis added). According to the IFPA, a pattern is at least five violations involving the same victim or similar actions by the person being charged. *Allstate Ins. Co.*, 871 A.2d at 181. For the purposes of this analysis, "each false claim constitutes a separate fraudulent act." *Id.* (citing *Merin v. Maglaki*, 599 A.2d 1256, 1259 (N.J. 1992)).

Plaintiff requests a sum certain of $2,313,659.73 against all Defaulting Defendants, jointly and severally. (Proposed Order, Kang Decl., Ex. C, ECF No. 35-5.) This sum certain represents $770,219.91 in actual damages, trebled. (*Id.*) Plaintiffs provide adequate documentation and support for their claim of damages amounting to $770,219.91, as the amount GEICO paid in reliance on Defaulting Defendants' billing. (Kang Decl., Ex. B, Root Decl. ¶ 5, ECF No. 35-4.) Plaintiffs are also successful claimants under the IFPA—insurance companies damaged as a result of violations of the IFPA, N.J.S.A 17:33A-7(a)—and thus where a pattern of illegal violations is established, they are entitled to recover treble the value of damages pled. Plaintiffs describe a nearly ten-year period of false claims, since 2008 (Pls.' Br. at 3), with over 20,000 illegal referrals accruing $200,000 in illegal kickbacks between 2008 and 2013 (Compl. ¶ 118(i)). *See also Zuberi*, 2017 WL 4790383, at *5 (describing this same underlying conduct as
16

a "systematic pattern over the course of nearly 10 years"); *Material Damages Adjustment Corp.*, 799 A.2d at 742 ("During the relevant time period, September 1997 to June 1999, Open MRI submitted hundreds of claims and received thousands of dollars from the plaintiff as payment for these claims."). This pattern of illegal and fraudulent conduct warrants statutory treble damages.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment is granted, and Defendant Khan's Cross-Motion to Vacate Default is denied. A corresponding order will follow.

Date: 3/9/16

ANNE E. THOMPSON, U.S.D.J.